## Louis Najac *vs.* Boston and Lowell Railroad Compan'

If various railroad companies whose lines connect together from Massachusetts into the British Provinces have arranged together for an excursion train over their several roads, and the company at this end of the route issues tickets with coupons attached for the whole distance, and its agent refuses to give a check for the luggage of a purchaser of such ticket, saying that the same " would be perfectly safe, as he was to go through with them," and the luggage is accordingly put into one of the company's baggage cars, which is sent through the whole distance in charge of its agent, the company is liable if the luggage is lost anywhere upon the route.

Contract to recover for the loss of a trunk and its contents.

The following facts were agreed: In September 1859 Josiah Perham suggested to the defendants' agent an arrangement for an excursion train from Boston to Montreal and back. Such an arrangement was accordingly made with all the connecting railroad companies on the line, by which the price of each ticket was fixed at five dollars, of which Perham was to have fifty cents and the residue was to be divided among the various railroad companies in proportion to the length of their respective routes, and the train was to start from the defendants' station in Boston on the 20th of September. The tickets were accordingly printed, having a printed heading " From Boston to

Montreal," and bearing the name of the defendants' agent, with the designation of his office, and with coupons attached for the other roads, good for ten days, and covering the return trip. Perham took some of these tickets and disposed of them as he pleased, and gave a receipt for such as he received, and returned all that he did not sell. The plaintiff, a citizen of Providence, purchased two tickets of Perham, one for himself and one for his wife, intending to go to Montreal, and on his return to visit friends in Vermont, New Hampshire and Maine, and to be absent from home several weeks. On the 20th of September he delivered two trunks to the defendants' baggage master at their station in Boston, and requested checks for them for Montreal. The baggage master declined to give checks, saying that they did not provide checks on excursion trains. The plaintiff then asked to have them checked by the regular train. To this the baggage master replied that the plaintiff and the trunks must go by the same train, and they would be perfectly safe, as he (the baggage master) was to go through with them. The trunks were put into the baggage car of the defendants, and the plaintiff and his wife took their seats in a passenger car of the defendants. The defendants' baggage master and both cars went through to Montreal, but the defendants' locomotive went only to the termination of their own road. Each road furnished its own locomotive and conductor. One of the plaintiff's trunks was lost after the termination of the defendants' road, but on what part of the route was left uncertain; and the plaintiff demanded it of the defendants' baggage master at Montreal on the 21st of September.

It was agreed that if upon these facts the action could be maintained judgment should be rendered for the plaintiff, for $355.70 ; and judgment was accordingly rendered for the plaintiff for that sum in the superior court, and the defendants appealed to this court.

*J. B. Thayer*, for the plaintiff. The peculiar character of this train does not affect the defendants' responsibility. Redfield on Railways, 328, and cases cited. *Great Northern Railway* v. *Shepherd*, 8 Exch. 30. Under the circumstances of this case, the fact

that the loss occurred beyond the termination of the defendants' line is immaterial. Redfield on Railways, 241–243, 284–291, and cases cited. It was the defendants' duty to give checks. *St.* 1854, *c.* 23. Under such an arrangement as was made in this case, the defendants' liability continues over the whole route. Redfield on Railways, 242, 284, 287, 315, 349, and cases cited. *Illinois Central Railroad* v. *Copeland,* 24 Illinois, 332. *Quimby* v. *Vanderbilt,* 17 N. Y. 306, 312. *Mytton* v. *Midland Railway,* 4 Hurlst. & Norm. 615.

*J. G. Abbott,* (*B. Dean* with him,) for the defendants. The defendants by their charter had no power to make any contract for carrying persons or property beyond their own limits. *Salem Mill Dam Corp.* v. *Ropes,* 6 Pick. 32. *Hood* v. *New York & New Haven Railroad,* 22 Conn. 502. *Pearce* v. *Madison, &c. Railroad,* 21 How. (U. S.) 442. Otherwise, they may make themselves common carriers over the whole country, or over the whole world. This loss may have occurred in the British Provinces. And the question is, whether a railroad company here can enter into a contract with other companies in other states and in Canada, by which they shall be liable for injuries occurring on other roads than their own. To allow them to do so is against public policy. They can have no control over such other roads. Such a contract is *ultra vires.* Besides; this question is settled by statute in this commonwealth. The legislature have defined the circumstances under which one railroad company may contract with others, outside of the state. Here were several companies. If this claim is established, it must be on the ground that they have entered into a partnership. But this they cannot do. *Whittenton Mills* v. *Upton,* 10 Gray, 582.

DEWEY, J. In the view we have taken of the present case, it is unnecessary to enter upon the consideration of the question as to the effect of an ordinary sale of a ticket, having coupons for the connecting roads, the place of destination being beyond the limits of the road of the company selling such ticket, in reference to the liability of such company for the loss of baggage of the ticket holder occurring beyond the limits of their

own road. The facts here present their own peculiar circumstances, upon which this case may be decided. The defendants had, in common with various connecting roads, arranged for an excursion train from Boston to Montreal, starting from the depot of the defendants in Boston. The plaintiff purchased two tickets duly issued by the defendants, having printed thereon " From Boston to Montreal," and having attached to them coupons for the other roads, which also had upon them the words " From Boston to Montreal." Having these tickets for himself and his wife, the plaintiff became entitled also to the carriage of his reasonable baggage, and he delivered to the defendants' baggage master at their depot two trunks, and requested checks for them to Montreal. The baggage master did not furnish checks, or offer to do so, either for the limited route of the defendants' road or through to Montreal. In this the defendants were acting in violation of law, such checks being required by the provisions of *St.* 1854, *c.* 23, by which it was made " the duty of all railroad corporations in this commonwealth to give checks, when requested to do so, to passengers, for the baggage of such passengers, when delivered for transportation."

Upon the plaintiff's renewing his demand for checks for his baggage, and asking to have his baggage sent forward by the regular train, if checks could not be given on an excursion train, the baggage master refused to send the trunks by the regular train, saying the trunks and the plaintiff must go by the same train, and they would be perfectly safe, as he (the baggage master) was to go through with them. The defendants' baggage car and baggage master went through to Montreal. At Montreal the baggage master delivered one of the trunks to the plaintiff. The other was demanded, but not delivered.

Upon the facts stated, the defendants, in violation of law, refused to give checks, although requested so to do. As a substitute, they, through their agent, declared to the plaintiff that the trunks would be perfectly safe, as their baggage master was to go through to Montreal on the train. The trunks were thereupon committed to the custody of the defendants' baggage

master, and the company assumed the obligation arising from these representations and acts. From the nature of the baggage, the plaintiff did not exercise any further personal oversight of it on the route, nor make any examination at the terminus of each road, to ascertain whether the trunks were or were not in the baggage car. Under these circumstances, the plaintiff has the right to recur to the defendants as the party immediately responsible for the loss of his trunk. Whether the action might not have been a joint one against all the railroad corporations which united in this common enterprise, it is unnecessary to decide. We have no doubt of the legal capacity of this corporation to assume responsibilities for the safe transportation of baggage beyond the limits of their own road. Angell & Ames on Corp. §§ 229, 239, 256. Redfield on Railways, 281–287. *Simkins* v. *Norwich & New London Steamboat Co.* 11 Cush. 102. *Fitchburg & Worcester Railroad* v. *Hanna,* 6 Gray, 539. What is necessary to constitute such contract, or what acts will create such liability, must be decided as the cases occur.

As the default occurred on the 21st of September, and the trunk was then demanded, interest may properly be allowed from that date. Judgment will be entered for the plaintiff for the sum stated in the report of the auditor, with interest as above stated.